IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENVILLE DIVISION

| | |
|---|---|
| Mamie Whitaker, ) | Civil Action No. 8:19-cv-01930-BHH-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Greenville County School District 52; ) | |
| Rex Ward; David Schoolfield; ) | |
| Kaycee Bradley, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants' motion to dismiss for failure to state a claim. [Doc. 9.] Plaintiff alleges discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and also a state-law claim for civil conspiracy. [Doc. 1-1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff brought suit in the Greenwood County Court of Common Pleas. [Doc. 1-1.] Defendants removed the action to this Court on July 8, 2019. [Doc. 1.] On July 15, 2019, Defendants filed a motion to dismiss for failure to state a claim regarding Plaintiff's state-law civil conspiracy claim. [Doc. 9.] Plaintiff filed a response opposing the motion on July 29, 2019. [Doc. 11.] The motion is now ripe for review.

## BACKGROUND

Greenwood School District 52 (the "District") is a school district in South Carolina. [Doc. 1-1 ¶ 2.] Rex Ward served as the Principal of Ninety-Six High School. [*Id.* ¶ 18.]

David Schoolfield served as Principal of Edgewood Middle School ("EMS") and Kaycee Bradley was an English Language Arts teacher at that school. [*Id.* ¶ 28; Doc. 9-1 at 1–2.]

Plaintiff is a black female who began working for the District as the In-School Suspension Teacher at Ninety-Six High School in 2010. [Doc. 1-1 ¶ 9.] She was promoted in 2013 to serve as the Integrated Business Applications Teacher at the school. [*Id.* ¶ 10.] Although she performed competently, she was treated harshly and unfairly by the District and by her white supervisors and coworkers based on her race. [*Id.* ¶¶ 11–12.] Plaintiff's former white supervisor, Andrea Bamberger, who was the Business Department Head at the school, treated Plaintiff "in a hostile manner and belittled her in front of her students and colleagues on multiple occasions." [*Id.* ¶ 13.] Plaintiff complained to the District in 2010 and 2016 about Bamberger's conduct, but the District took no action, and Bamberger's mistreatment of Plaintiff worsened. [*Id.* ¶ 14.]

Plaintiff's white supervisors and co-employees also interfered in her participation in South Carolina's Program of Alternative Certification of Educators ("PACE") to obtain a professional teaching certification. [*Id.* ¶ 16.] Once Plaintiff completed the induction program during the 2013–14 school year, she was supposed to participate in the ADEPT/SAFE-T orientation program, but the District did not provide her with the needed orientation or schedule her ADEPT summative evaluation during Plaintiff's four active years with PACE, although the District did provide similarly situated white employees with the orientation and training during the same time period. [*Id.*] Although Plaintiff intended to

2

complete ADEPT during the 2017–18 schoolyear, her efforts were thwarted when she was transferred to EMS at the beginning of that schoolyear.[1]  [*Id.* ¶¶ 21–26.]

Plaintiff was the only black teacher at EMS, and she continued to be mistreated at the new school by her white supervisors and co-workers.  [*Id.* ¶ 29.]  That treatment included being excluded multiple times from events such as award ceremonies, not receiving the training and resources Plaintiff needed to do her job, being treated in a hostile manner, being denied requested assistance and being denied the opportunity to have other employees substitute for her without having to record Plaintiff's absences in the computer system.  [*Id.*]  Additionally, the state required that Plaintiff complete her ADEPT/SAFE-T evaluation in the same subject and grade level that Plaintiff taught for PACE.  [*Id.* ¶ 26.] Although Plaintiff was initially granted permission to teach Microsoft Word at EMS, which would have allowed her to satisfy ADEPT, the following semester she was required to switch to keyboarding.  [*Id.* ¶¶ 28, 31–32.]  In March 2018, Plaintiff also learned that she had not passed her ADEPT evaluation, even though she had not been previously informed that there was any problem with her evaluation and she had always previously received satisfactory evaluations.  [*Id.* ¶¶ 35–36.]  Plaintiff was told that Schoolfield instructed Bradley, one of the members of Plaintiff's ADEPT evaluation team, to give Plaintiff a failing evaluation, which Bradley did.  [*Id.* ¶ 38.]  Plaintiff was later informed that, because of her

---

[1] Plaintiff also alleges that while she was working as the In-School Suspension teacher, she was not allowed to have a black co-worker assist her with afterschool detention because the co-worker was not a certified teacher, but when a white teacher was later placed in charge of the afterschool detention program, he was allowed to have a white non-certified co-worker assist.  [Doc. 1-1 ¶ 15.]

3

evaluation result, she would not be offered a contract for the 2018–19 schoolyear with the District.[2] [*Id.* ¶ 40.]

Shortly after Plaintiff's employment with the District ended, she filed an administrative charge with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission ("EEOC"), and the EEOC subsequently issued a right-to-sue letter. [*Id.* ¶ 7.]

Plaintiff then brought suit in the Greenwood County Court of Common Pleas on June 3, 2019, alleging one claim for discrimination under Title VII against the District and one for state-law civil conspiracy against Ward, Schoolfield, and Bradley. [*Id.* ¶¶ 44–54.] Plaintiff requests compensatory and punitive damages, as well as attorneys' fees and costs. [*Id.* at 12.]

## **APPLICABLE LAW**

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*

---

[2]The District declined to place Plaintiff on an improvement plan that would have allowed her to continue her employment, yet similarly situated white employees received more favorable treatment. [Doc. 1-1 ¶¶ 40–41.]

*P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendants argue that the Complaint fails to state a claim for civil conspiracy. [Doc. 9-1.] The Court agrees.

A plaintiff must prove three elements to establish a claim for civil conspiracy: "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Id.* Thus, to properly plead a claim for civil conspiracy, "one must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the

claim." *Id.* at 875.  "Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action."  *Id.* at 874.  Accordingly, "[i]f a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of [her] civil conspiracy claim, [the] conspiracy claim should be dismissed."  *Id.* at 875.

Here, Plaintiff does not allege any acts in furtherance of a civil conspiracy that are separate and apart from the actions underlying the discrimination claim.  As the basis for the Title VII discrimination claim, Plaintiff alleges:

> [T]he District, by and through its employees:  treated Plaintiff in a hostile manner in comparison to similarly situated white employees; enforced policies in a disparate manner; failed to provide Plaintiff with the necessary training and resources to complete her job; excluded Plaintiff from ADEPT/SAFE-T orientation and evaluation process; involuntarily transferred Plaintiff from her position at Ninety-Six High School to a position that was not suitable for completion of her ADEPT/SAFE-T evaluation; excluded Plaintiff from events; falsely accused Plaintiff of poor performance on her ADEPT evaluation; and terminated Plaintiff from her position with the District.

[Doc. 1-1 ¶ 45.]  Plaintiff alleges that these actions caused "the loss of her employment with the District, the loss of the opportunity to earn her teaching certificate, back pay, front pay, loss of earning capacity, loss of benefits, and pain and suffering."  [*Id.* ¶ 48.]

In the civil conspiracy section of the Complaint, Plaintiff alleges conclusorily that "[t]he individual defendants and others met, conspired, and schemed to cause Plaintiff harm."  [*Id.* ¶ 50.]  Because Plaintiff does not identify any conduct in support of the alleged conspiracy that was not also a basis for the discrimination claim, Plaintiff fails to state a claim for civil conspiracy.  *See State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497,

7

504 (D.S.C. 2017) ("[Plaintiff] cannot plead the same set of facts for the actionable wrong and the civil conspiracy, then expect to recover damages for both. In her claim for civil conspiracy, [Plaintiff] has merely incorporated by reference the alleged acts of [the defendants] in her intentional interference with contract claim and added conclusory allegations that [the defendants] were engaged in a conspiracy."); *see also id.* at 504 n.3 (holding that the vagueness of the allegations of conspiracy also justified dismissal of the civil conspiracy claim). Similarly, the damages Plaintiff alleges were caused by the conspiracy, that she was "ostracized, isolated, and black-listed from the educational profession" [*id.* ¶ 54], are damages also would be encompassed by the discrimination claim. *See Murphy*, 260 F. Supp. at 504 (holding the plaintiff failed to adequately plead special damages from a conspiracy because she failed to plead damages that "arose specifically because of the conspiracy itself, and that were not caused by the intentional interference with contract claim"). Accordingly, the failure to identify damages that were not caused by the alleged discrimination claim provides another basis for dismissal of the conspiracy cause of action. For both of these reasons, the Court recommends granting the motion to dismiss the civil conspiracy claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion to dismiss the civil conspiracy claim [Doc. 9] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

October 16, 2019
Greenville, South Carolina