IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Mamie Whitaker,<br><br>                            Plaintiff,<br><br>v.<br><br>Greenville County School District 52; Rex Ward; David Schoolfield; Kaycee Bradley,<br><br>                            Defendant. | Civil Action No. 8:19-cv-01930-BHH-JDA<br><br>**OBJECTIONS TO<br>REPORT AND RECOMMENDATION** |

      Plaintiff respectfully objects to the Magistrate Judge's recommendation to grant Defendant's motion to dismiss her civil conspiracy claim. (Dkt. 17: R&R).

## **INTRODUCTION**

      This is an employment case concerning Plaintiff's teaching certificate and separation from her employment with Defendant Greenwood County School District 52 ("the District"). Plaintiff alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* against Defendant Greenwood County School District 52 ("the District"), and civil conspiracy against Defendant Ward, Defendant Schoolfield, and Defendant Bradley (collectively "Individual Defendants"). (Dkt. 1.1).

      The Individual Defendants moved for the dismissal of Plaintiff's Civil Conspiracy claim. The Magistrate Judge recommended dismissal on the following grounds: (1) "Plaintiff does not identify any conduct in support of the alleged conspiracy that was not also a basis for the discrimination claim;" and (2) Plaintiff failed to identify damages that were not caused by the alleged discrimination claim. (Dkt. 37: R&R p. 7-8). Plaintiff makes the following specific objections:

1. The Magistrate overlooked actions taken by the individual defendants in further of the civil conspiracy that were separate and apart from the actions underlying Plaintiff's discrimination claim; and
2. Plaintiff has identified damages that were unrelated to Plaintiff's alleged discrimination claim.

These objections, expounded upon below, warrant trial on Plaintiff's civil conspiracy claim.

## RELEVANT FACTUAL ALLEGATIONS

Plaintiff, a black female, began working for the Defendant School District ("District") at Ninety-Six High School in 2010. (Dkt. 1.1: Compl. ¶ 9). Plaintiff performed her job in a competent, if not more than competent, manner and met the District's legitimate expectations during her employment. (Dkt. 1.1: Compl. ¶ 11). However, Plaintiff received harsh and unfair treatment from the District, by and through Plaintiff's white supervisors and coworkers, based on her race during her employment. (Dkt. 1.1: Compl. ¶ 12). Plaintiff complained to the District in 2010 and 2016 about the unfair treatment, but the District did not take action, and the harsh and unfair treatment towards Plaintiff continued and worsened. (Dkt. 1.1: Compl. ¶ 13).

### A. Plaintiff's ADEPT/SAFE-T Orientation

Plaintiff participated in South Carolina's Program of Alternative Certification of Educators ("PACE") to obtain a professional teaching certification. (Dkt. 1.1: Compl. ¶ 16). Once Plaintiff completed the induction program during the 2013-2014 school year, Plaintiff was supposed to participate in the ADEPT/SAFE-T orientation program, as required by state law, but the District did not provide her with the orientation for ADEPT or schedule her ADEPT summative evaluation during Plaintiff's four active years with PACE. (Dkt. 1.1: Compl. ¶ 16). The District provided similarly situated white employees with ADEPT/SAFE-T orientation and training during the same four years. (Dkt. 1.1: Compl. ¶ 16). Rather than providing Plaintiff with the necessary

ADEPT/SAFE-T orientation and evaluation, the District evaluated Plaintiff on Student Learning Objectives during the 2015-2016 and 2016-2017 school years and informed Plaintiff that she passed those evaluations. (Dkt. 1.1: Compl. ¶ 17).

Plaintiff reminded Defendant Ward, who was serving as Ninety-Six High School's Principal, on multiple occasions that Plaintiff needed the ADEPT/SAFE-T orientation and training but did not receive it. (Dkt. 1.1: Compl. ¶ 18). Ninety-Six High School held the ADEPT/SAFE-T orientation each year that Plaintiff participated in the PACE program (four years), but Plaintiff was not informed of or invited to the orientation, whereas similarly situated white teachers were informed of the orientation and invited to participate. (Dkt. 1.1: Compl. ¶ 19). Consequently, Plaintiff was not able to participate in the ADEPT/SAFE-T orientation. (Dkt. 1.1: Compl. ¶ 20).

In May 2017, the South Carolina Department of Education informed the District's Assistant Superintendent that Plaintiff completed all PACE requirements for professional certification, except passing the Praxis exam, submitting Plaintiff's official transcript for her classroom management course, and the successful ADEPT evaluation, and that the District could request an uncertified grace year to allow Plaintiff to continue to teach while completing the requirement. (Dkt. 1.1: Compl. ¶ 21). Plaintiff passed the Praxis exam for certification in August 2017, leaving only a successful ADEPT evaluation to be completed. (Dkt. 1.1: Compl. ¶ 22).

**B. Plaintiff's Transfer**

The District transferred Plaintiff to Edgewood Middle School to teach keyboarding for the 2017-2018 school year, even though the District and Defendant Ward were aware that it was a state requirement that Plaintiff complete her ADEPT/SAFE-T evaluation in the same subject and grade level that Plaintiff taught for PACE, and the District had received approval for Plaintiff to remain in her position for another year. (Dkt. 1.1: Compl. ¶ 24, 26). One of Plaintiff's coworkers

told Plaintiff that she was being set up, and that Plaintiff would not be able to complete ADEPT while teaching keyboarding, because the keyboarding class is based on a tutorial that does not require teaching, and ADEPT evaluations require in-class observations of teaching. (Dkt. 1.1: Compl. ¶ 27).

Plaintiff sent a letter to Defendant Schoolfield, the Principal of Edgewood Middle School, during her first week and requested a meeting to ensure that she would be able to complete ADEPT. (Dkt. 1.1: Compl. ¶ 28). Plaintiff met with him and explained that she was concerned that she would not be able to complete ADEPT using the keyboarding tutorial and asked if she could teach Microsoft Word to satisfy ADEPT. (Dkt. 1.1: Compl. ¶ 28). Defendant Schoolfield approved, and Plaintiff began teaching the students Microsoft Word in August 2017. (Dkt. 1.1: Compl. ¶ 28).

On December 19, 2017, the last day before Christmas break, Defendant Schoolfield told Plaintiff that she could not teach Microsoft Word and that she needed to teach keyboarding, even though Plaintiff had not received training or the necessary resources to teach keyboarding. (Dkt. 1.1: Compl. ¶ 31). Plaintiff began teaching the students keyboarding upon their return from Christmas break. (Dkt. 1.1: Compl. ¶ 33).

### C. Plaintiff's ADEPT Evaluation

On March 21, 2018, Defendant Schoolfield called Plaintiff into a meeting and informed Plaintiff that she did not pass her ADEPT evaluation. (Dkt. 1.1: Compl. ¶ 35). Defendant Schoolfield did not discuss a professional growth and development plan with her, as set out in the ADEPT/SAFE-T guidelines. (Dkt. 1.1: Compl. ¶ 35). Plaintiff informed Defendant Schoolfield that she did not agree with the outcome of her ADEPT evaluation, to which he responded, "Well, you know, with the budget cut..." (Dkt. 1.1: Compl. ¶ 35). Plaintiff was not informed prior to March 21, 2018, of any issues surrounding her performance or her ADEPT evaluation. (Dkt. 1.1:

4

Compl. ¶ 36). Plaintiff received satisfactory evaluations throughout her years of employment prior to March 21, 2018. (Dkt. 1.1: Compl. ¶ 36).

Defendant Schoolfield and Defendant Ward joined together to create the obstacles described herein for Plaintiff and to ultimately make Plaintiff fail the ADEPT evaluation. (Dkt. 1.1: Compl. ¶ 37). Defendant Schoolfield instructed one of the members of Plaintiff's ADEPT evaluation team, Defendant Bradley, to provide Plaintiff with an unsatisfactory or failing evaluation, and Defendant Bradley complied. (Dkt. 1.1: Compl. ¶ 38). The ADEPT evaluation team, including Campbell, Defendant Schoolfield, and Defendant Bradley, were not knowledgeable about the keyboarding tutorial or the level of teaching required for the keyboarding tutorial. (Dkt. 1.1: Compl. ¶ 39).

**D.  Plaintiff's Termination**

The District later informed Plaintiff that she would not be offered a contract with the District for the 2018-2019 school year as a result of her ADEPT evaluation. (Dkt. 1.1: Compl. ¶ 40). The District could have placed Plaintiff on an improvement plan and allowed her continued employment during the implementation of such a plan, but the District denied Plaintiff the opportunity to continue employment with the District. (Dkt. 1.1: Compl. ¶ 40).

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the District Court. The recommendation has no presumptive weight, and the responsibility to make a final determination rests with the District Court. *Matthews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. 28 U.S.C § 636(b). The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the

5

Magistrate Judge with instructions. *Id*. In the absence of an objection, the Court reviews the Report for clear error. *See*, *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

This Report and Recommendation arises from a Rule 12(b)(6) motion to dismiss. Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the sufficiency of the facts alleged in a plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' ... [but a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (q*uoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557). Rather, to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The United States Supreme Court held in Iqbal:

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6

*Iqbal*, 556 at 678. When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **SPECIFIC OBJECTIONS**

In the Report and Recommendation, the Magistrate reasoned first that "Plaintiff does not identify any conduct in support of the alleged conspiracy that was not also a basis for the discrimination claim". (Dkt. 37: R&R p. 7). Additionally, the Magistrate found that "the failure to identify damages that were not caused by the alleged discrimination claim provides another basis for dismissal." (Dkt. 37: R&R p. 8). Plaintiff respectfully objects to the Magistrate's determination that Plaintiff failed to plead special damages and acts in furtherance of the conspiracy independent from the other wrongful acts.

1. **Acts in Furtherance**

To establish the first two elements of a claim of civil conspiracy, a plaintiff needs to allege "additional acts in furtherance of the conspiracy." *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981). Courts have found viable civil conspiracy claims where there is some overlap between allegations and the Plaintiff has pled additional acts supporting a civil conspiracy. See, *State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497, 504 N 3 (D.S.C. 2017) (citing *Integrity Worldwide, Inc. v. Int'l Safety Access Corp.*, No. 0:14-CV-0213-MBS, 2015 WL 1297823, at *3 (D.S.C. Mar. 23, 2015); *James v. Pratt & Whitney*, 126 F. App'x 607, 613 (4th Cir. 2005)). Plaintiff has pled such acts, independent from the acts involved in her discrimination claim, taken by the Individual Defendants in furtherance of the conspiracy.

The Magistrate noted that, related to her discrimination claim, Plaintiff alleges:

> [T]he District, by and through its employees: treated Plaintiff in a hostile manner in comparison to similarly situated white employees; enforced policies in a disparate manner; failed to provide Plaintiff with the necessary training and resources to complete her job;

7

> excluded Plaintiff from ADEPT/SAFE-T orientation and evaluation process; involuntarily transferred Plaintiff from her position at Ninety-Six High School to a position that was not suitable for completion of her ADEPT/SAFE-T evaluation; excluded Plaintiff from events; falsely accused Plaintiff of poor performance on her ADEPT evaluation; and terminated Plaintiff from her position with the District.

(Dkt. 17: R&R, p. 7). The Magistrate stated, with respect to Plaintiff's civil conspiracy claim, "Plaintiff alleges conclusorily that 'the individual defendants and others met, conspired and schemed to cause Plaintiff harm.'" *Id.* However, the Magistrate's Report and Recommendation overlooks the actions taken by the Individual Defendants in furtherance of the civil conspiracy, incorporated by reference under Plaintiff's civil conspiracy claim and described in the factual allegations of Plaintiff's Complaint, which do not serve as the basis for Plaintiff's discrimination claim.

Plaintiff alleges acts in furtherance of the civil conspiracy, independent of the acts described above for her discrimination claim, including, but not limited to:

   a. Defendant Schoolfield approving Plaintiff's request to teach Microsoft Word in August 2017, then retracting his approval in December 2017 and informing Plaintiff that she would have to teach keyboarding for the rest of the school year;
   b. Defendant Schoolfield instructing Defendant Bradley to provide Plaintiff with an unsatisfactory or failing evaluation;
   c. Defendant Bradley providing Plaintiff with a failing evaluation upon Defendant Schoolfield's instruction; and
   d. Defendant Schoolfield and Defendant Ward joining together to create obstacles for Plaintiff and to ultimately cause Plaintiff to fail her ADEPT evaluation.

(Dkt. 1.1: Compl. ¶¶ 28, 31, 37-38). These relevant paragraphs constitute actions, separate and apart from the actions underlying Plaintiff's discrimination claim, taken by the Individual Defendants in furtherance of the conspiracy to deprive Plaintiff of her teaching certificate and position with the District. See, *State Farm Life Ins. Co. v. Murphy*, 260 F. Supp. 3d 497, 504 N 3 (D.S.C. 2017) (citing *Integrity Worldwide, Inc. v. Int'l Safety Access Corp.*, No. 0:14-CV-0213-

8

MBS, 2015 WL 1297823, at *3 (D.S.C. Mar. 23, 2015); *James v. Pratt & Whitney*, 126 F. App'x 607, 613 (4th Cir. 2005)). As such, the Magistrate's conclusion that Plaintiff failed to allege actions in furtherance of the conspiracy separate and apart from the other wrongful acts alleged in the Complaint is in error, and Plaintiff's civil conspiracy claim should not be dismissed.

### 1.1. Special Damages

The third element of a Civil Conspiracy cause of action requires that the conspiracy caused the plaintiff special damages. *Vaught v. Waites*, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct. App. 1989). To establish special damages, "the damages alleged must go beyond the damages alleged in the other causes of action." *Hackworth v. Greywood at Hammett, L.L.C.*, 358 S.C. 110, 115, 682 S.E.2d 871, 874 (Ct. App. 2009) (citing *Vaught*, at 209, 387 S.E.2d 95)). Plaintiff has pled damages for her Civil Conspiracy cause of action that are separate and distinct from the damages of her Title VII claim. (Dkt. 37: R&R p. 8). The damages pled under the Title VII cause of action are as follows:

> 48. As a direct and proximate result of the race discrimination alleged herein, Plaintiff suffered damages for which the District is liable, including the loss of her employment with the District, the loss of the opportunity to earn her teaching certificate, back pay, front pay, loss of earning capacity, loss of benefits, and pain and suffering. The Plaintiff is also entitled to attorneys' fees and costs of this action.

(Dkt. 1.1: Compl. ¶ 48). The damages pled under the Civil Conspiracy cause of action are as follows:

> 54. Such civil conspiracy has directly and proximately caused the Plaintiff to be ostracized, isolated, and black-listed from the educational profession; it has caused the Plaintiff to suffer increased anxiety; and has caused her to incur the costs and reasonable attorney's fees of prosecuting this action. Further, the Plaintiff is entitled to an award of punitive damages for the malicious, intentional, and mean-spirited actions of the individual defendants acting herein.

9

(Dkt. 1.1: Compl. ¶ 54).

The above demonstrates that, although limited, natural overlap exists between the relevant damages sought, Plaintiff's conspiracy damages are distinct from the damages sought in her other claims. Those primary damages include: Plaintiff's ostracization, Plaintiff's isolation, Plaintiff becoming blacklisted from the educational profession, Plaintiff's increased anxiety, and punitive damages. (Dkt. 1.1).

This Court's determination in *Grady v. Spartanburg School Dist. Seven* supports that Plaintiff sufficiently pled special damages:

> Here, however, Plaintiff has claimed separate damages against different defendants in the civil conspiracy claim and for different acts of the Individual Defendants (as determined by this Court's finding that Plaintiff sufficiently pleaded a separate overt act in this claim). Plaintiff has alleged that these emotional damages came from being ostracized from her peers, distinct from the emotional damages of losing her job. These damages could also be termed "aggravated damages," which are generally sufficient to satisfy the requirement of pleading special damages. [Internal Citation Omitted] The Court is mindful that such distinction may be difficult for Plaintiff to draw and prove on summary judgment or at trial, but that is not the purview of the Court on a motion to dismiss. Therefore, based on the foregoing analysis, the Court recommends denying Andrew and Kennedy's motion to dismiss.

*Grady v. Spartanburg Sch. Dist. Seven,* No. 7:13-CV-02020-GRA, 2014 WL 1159406, at *14 (D.S.C. Mar. 21, 2014) (Report and Recommendation of U.S. Mag. J. Jacquelyn D. Austin) (Adopted by U.S. Dist. Ct. J. G. Ross Anderson, Jr.). The pleading distinctions outlined above, in conjunction with the above persuasive authority, indicate that Plaintiff sufficiently pled special damages.

Plaintiff disagrees with the Magistrate's assertion that ostracization, isolation, and black-listing are damages that "also would be encompassed by the discrimination claim." (Dkt. 37: R&R

p. 8). Ostracization and isolation are aggravated damages as defined by *Grady* and are not encompassed by the pain and suffering damage under Plaintiff's discrimination claim. *Grady,* 2014 WL 1159406 at *14. Furthermore, Plaintiff's discrimination claim does not touch upon the issue of black-listing. While Plaintiff's discrimination claim alleges loss of future earning capacity, black-listing is distinct from loss of future earning capacity. Loss of future earning capacity arises from the damage to Plaintiff's resume, to wit, her loss of certification, and the non-voluntary conclusion of her employment. Black-listing refers to the Individual Defendant's conspiracy to proactively prevent Plaintiff from associating with the peers and colleagues in her profession. Additionally, the Magistrate wholly ignores that Plaintiff has pleaded damages for her increased anxiety, and for punitive damages, neither of which are remotely to any damages pled for under her discrimination claim. (Dkt. 37: R&R).

Therefore, Plaintiff has appropriately pled a sustainable claim of civil conspiracy, and the Magistrate's Report and Recommendation to the contrary should not be adopted. (Dkt. 37: R&R). Plaintiff, for this reason, asks the Court to allow Plaintiff's civil conspiracy claim to proceed through discovery.

## **CONCLUSION**

Based on the foregoing objections and the reasons set forth in Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Plaintiff respectfully requests that this Court **REJECT** the Magistrate Judge's Report and Recommendation and **DENY** the Inidividual Defendants' Motion. In the event that the Court does find the Magistrate's Report and Recommendation persuasive, Plaintiff requests leave to amend the complaint and remedy the issues alleged.

**CROMER BABB PORTER & HICKS, LLC**

BY:   s/Elizabeth M. Bowen
      Elizabeth M. Bowen (#12705)
      J. Lewis Cromer (#362)
      1418 Laurel Street, Suite A
      Post Office Box 11657
      Columbia, South Carolina 29211
      Tel:   803-799-9530
      Fax:  803-799-9533
*Attorney for Plaintiff*

October 30, 2019
Columbia, South Carolina